OPINION
{¶ 1} Shawn N. Lemon was found guilty by a jury in the Montgomery County Court of Common Pleas of two counts of murder and two gun specifications. The convictions were merged for sentencing, and Lemon was sentenced to imprisonment for 15 years to life, to be served consecutively with his sentence in another case. He was sentenced to an additional three years of actual incarceration on the firearm specification. Lemon appeals from his conviction.
 {¶ 2} The state's evidence established the following facts:
 {¶ 3} On the night of June 5, 2001, Jerone "Mark" Sanders was at the Majestic Lounge on West Third Street in Dayton in the late evening with his friends Bobby Birdsong and Jermaine Coleman. Shawn Lemon, his friend Mike, and a man named Kenny were also at the Majestic Lounge. According to Sanders' friends, tensions existed between Sanders and Lemon due to some past dealings, and Sanders had words with Lemon, Mike, and Kenny while he was at the Majestic Lounge. According to Birdsong, Mike encouraged Sanders "to end this. It's been going on too long," presumably referring to the conflict, but Lemon had stated, "We can never be cool." Lemon said to Sanders, "You don't want to die tonight." Coleman also testified that words were exchanged between Lemon and Sanders inside the Majestic.
 {¶ 4} In the early morning hours, Sanders, Birdsong, Coleman, Lemon, and Mike were outside in the parking lot of the Majestic. Coleman testified that Lemon had walked over to a red Thunderbird, had taken a gun from the car, had cocked it, and had put it in his pocket. About the same time, Sanders had seen a friend, Dena, that he had not talked with for awhile coming up an alley toward the Majestic, and he had struck up a conversation with her. During the course of this conversation, Kenny came out the bar, approached Sanders, and either bumped or had words with him. Sanders pushed Dena out of the way and punched Kenny twice, knocking him to the ground. Almost immediately, Lemon approached Sanders from the back and shot him in the head.
 {¶ 5} Coleman and Birdsong ran when the shooting began, and Birdsong testified that he heard a second shot. As they returned a few minutes later, Coleman passed Mike, who grabbed his shoulders and said, "Go get your boy." When Coleman and Birdsong reached the parking lot, Lemon and the red Thunderbird were gone, and Sanders was lying in the alley. Others told the men that Sanders had been run over. Both men seemed to know that Sanders was dead.
 {¶ 6} Neither Coleman nor Birdsong stayed to give a statement to the police the night of the shooting. To explain this fact, they cited their upset and grief. Coleman stated that he had intended to contact the police at a later time, but he had been delayed from doing so by his mother's death the next day. He contacted the police on June 18, 2001. Birdsong did not talk with the police until Lemon was arrested two years later, but he stated that he had always intended to come forward for the court proceedings when Lemon was caught.
 {¶ 7} The police investigation provided additional details about Sanders' death. Officer Michael Lally was dispatched to the Majestic about 1:30 a.m. on June 6, 2001. He found Sanders lying in the alley with his clothes torn and "road rash" on his body. Sanders had no pulse and was not breathing. A police officer who specialized in accident reconstruction testified that there was a pool of blood near the parking lot and a trail of blood and other bodily fluids of about 87 feet leading to where the body was found. He testified that the pavement was "clean" between the pool of blood and the body, as if something had been dragged along the pavement to the location of the body.
 {¶ 8} The coroner testified that Sanders had been shot in the back left side of his head, that the bullet had lodged behind Sanders' forehead, and that this had been the fatal injury. No gunpowder was found around the wound, indicating that the shot had been fired from at least 12 to 24 inches away. The coroner further testified, however, that Sanders had injuries to his body consistent with being dragged or run over by an automobile, and that these injuries had occurred around the time of death.
 {¶ 9} Although the police began searching for Lemon almost immediately, he was not located until March 2003, when he was arrested in Philadelphia under an assumed name. He was transported back to Dayton by Dayton police officers. During the drive, Lemon was questioned about his involvement in Sanders' murder. Lemon admitted that his relationship with Sanders had been strained in the months prior to his death and that he had seen Sanders at the Majestic Lounge the night of the shooting. He denied any involvement in the shooting but stated that a family member had driven him to Philadelphia that same night. He admitted that he had known the police were looking for him, and he could not explain why he did not contact the police.
 {¶ 10} Neither the red Thunderbird nor the gun was ever found.
 {¶ 11} The defense did not call any witnesses.
 {¶ 12} Lemon was found guilty of two counts of murder: purposely causing the death of another and causing the death of another as a proximate result of committing or attempting to commit felonious assault. He was found guilty of a firearm specification as to each count. Lemon was sentenced as described supra.
 {¶ 13} Lemon raises one assignment of error on appeal.
 {¶ 14} "Appellant's conviction was against the manifest weight of the evidence."
 {¶ 15} Lemon claims that the jury clearly lost its way in convicting him. He cites the following factors in support of this argument: inconsistencies in the testimonies of Coleman and Birdsong about the words that were exchanged in the bar; Kenny's apparent motive to harm Sanders; the lack of a fearful reaction from Sanders or his friends to seeing Lemon with a gun; and the possible firing of at least one additional shot after Coleman and Birdsong had fled the scene.
 {¶ 16} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin, 20 Ohio App.3d 172, 175,485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances.
 {¶ 17} Although there were some inconsistencies and gaps in the evidence, the jury could nonetheless have found, beyond a reasonable doubt, that Lemon had murdered Sanders. Sanders' friends' accounts of his conversations with Lemon, Mike, and Kenny did differ somewhat, but the evidence does not suggest that the men were together the entire time they were inside the Majestic. Moreover, both friends testified that Sanders had knocked Kenny to the ground just seconds before he was shot, and that Lemon had been the shooter. Thus, regardless of whether Kenny might have had a motive to shoot Sanders, it was clear from the evidence that he did not do so. Likewise, since the witnesses testified that they saw Lemon shoot Sanders in the back of the head, the jury could have reasonably dismissed any alleged uncertainty about who fired a shot or shots after Coleman and Birdsong fled as irrelevant to the central issues in the case. Finally, the fact that the victim's friends were not alarmed to see Lemon getting a gun from his car may suggest that they did not expect the situation to escalate in the way that it did, but it does not serve to exonerate Lemon.
 {¶ 18} The jury did not lose its way or create a manifest miscarriage of justice in convicting Lemon of murdering Sanders.
 {¶ 19} The assignment of error is overruled.
 {¶ 20} The judgment of the trial court will be affirmed.
Fain, P.J. and Grady, J., concur.